IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CW GOVERNMENT TRAVEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-718C |
| v. | ) | (Judge Hewitt) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(d)(1), defendant respectfully submits the following proposed findings of uncontroverted fact.

1. CW Government Travel, Inc. ("CW") entered into contracts with the Military Surface Deployment and Distribution Command to supply travel services to the Army in five Defense Travel Regions ("DTRs"). Pl. Compl. ¶ 1A.

2. Four of the DTRs include requirements for travel services at a total of 54 Military Entrance Processing ("MEPS") locations. Pl. Compl. pp. 1-2.

3. The travel service contracts are requirements contracts and contain the following clauses in Section 1.7 of the Performance Work Statement (PWS):

> **1.7.1** The contractor has the exclusive right to provide all official commercial travel services at all sites covered in this contract.
>
> **1.7.2** No person, private organization, or commercial travel service, including competing travel agencies, direct suppliers, or travel software vendors will be permitted direct access to areas under DoD control to advertise, sell, provide or promote official travel services to those sites, unless the Contractor has first declined to provide the particular service of the Contractor's levels of service are determined by the Contracting Officer to be unresponsive and/or unsatisfactory.

App. 4-5. [1]

4. The contracts contained a base term of one year (October 1, 2002 through September 30, 2003), and eight option periods of six months each, for a maximum term of five years ending on September 30, 2007. Options have been exercised upon all the contracts, currently extending performance to September 30, 2004. Pl. Compl. ¶ 17.

5. The contracts include the standard "Option to Extend the Term of the Contract" clause, FAR § 52.217-9, that permits, but does not require, the Government to exercise options.

6. The contracts additionally incorporate, by reference, the standard contract clause for commercial items (FAR 52.212-4). Paragraph (l) of that clause contains a provision allowing termination of the contract for the Government's convenience. The first sentence of that paragraph states: "The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience."

7. The PWS included other clauses intended to facilitate a smooth transition of requirements between Army and Defense Travel Service ("DTS") requirements. These included the following:

> **1.11** Due to projected base closures and realignments, the Government cannot forecast how the revenue for official travel will be affected. As sites(s) are identified for addition or deletion, the Contracting Officer will issue a modification to the contract. A 60-day written notice will be provided to the contractor. In addition, Offerors are hereby notified that upon implementation of the Defense Travel Region 6 (DTR 6) contract the following locations (Ft Campbell, KY, Missouri; and Nebraska) will be deleted from the respective regions and incorporated into the DTR 6 contract.

---

[1] "App." refers to the appendix filed with Defendant's Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment."

> **1.1.1.2** The Army/other DoD agencies may exercise options included within the contract. However, if during the life of the contract, the DoD implements the Defense Travel System (DTS) and is able to provide the Army/other DoD agencies with travel services under the new system, some or all options may not be exercised under the contract resulting from this solicitation.
>
> **1.6.7** At a future date a DOD travel services contract(s) will be awarded replacing this contract and all other Service/Agency existing travel service contracts. Once the DOD travel services contract is awarded all DOD sites will transition in accordance with the implementation dates to the DOD travel services contract.
>
> **1.6.8** At any time after the base period of this contract, with a 90-day notice from the Contracting Officer to the Contractor, the Government may identify any/or all workload included in this contract to be deleted.

App. 1-4.

8. On October 8, 2003, CW sent a letter addressed to its contracting officer, Jackie Robinson-Burnette, and raised the question of a possible transfer of MEPS travel requirements to the DTS. The letter referenced its contracts' "exclusivity clauses," PWS ¶ ¶ 1.7.1 and 1.7.2, and asserted that CW believed that it was the exclusive provider of MEPS travel service as long as the contract were in effect. The letter requested that the contracting officer issue a final decision if she did not agree with CW's interpretation. App. 6-7.

9. The contracting officer responded on October 17, 2003. She stated that the Military Traffic Management Command had no plans to remove the MEPS requirements from CW's contracts, but that she could not promise that these requirements would <u>never</u> be removed. Ms. Robinson-Burnette noted that there were several clauses in the contract that permitted the Government to remove requirements. Ms. Robinson-Burnette did not provide a final decision. App. 8.

10. CW wrote another letter to the contracting officer on November 3, 2003. In this letter, CW opined that any action to partially terminate the contract for the Government's convenience would constitute a material breach of its contract. CW then again requested a final decision. App. 9-10.

11. The Army did not specifically respond to CW's November 3, 2003 letter. In a letter dated November 18, 2003, the contracting officer requested workload data from CW regarding MEPS locations. Pl. Compl. ¶ 64.

12. On December 1, 2003, CW sent a third letter to its contracting officer and alleged that the workload requests indicated the Government's intention to use other contractors to perform MEPS travel requirements. CW again requested a final decision. App. 11-12.

13. The contracting officer responded on December 29, 2003. Ms. Robinson-Burnette reiterated that there was no intention to delete MEPS requirements from CW's contracts. She noted that, although the DTS PMO did issue a small-business set aside draft solicitation for travel services at certain MEPS sites, no deletions of CW's requirements had been issued. She also maintained that CW's contracts contemplated a transfer of some requirements. Ms. Robinson-Burnette concluded that she did not consider her letter to be a final decision. She wrote: "In my opinion, there is no current dispute over the contract terms that govern your ongoing performance under these travel services contracts." App. 13-14.

14. On January 6, 2004, CW sent its fourth, and final, letter to Ms. Robinson-Burnette. CW argued that it was entitled to a final decision upon this matter. CW referenced its right under procurement regulations for an interpretation of contract terms and demanded that the contracting officer confirm the exclusivity of CW to fulfill MEPS travel requirements. App.15-17.

15. The contracting officer responded to this fourth and final CW letter on March 1, 2004. In her letter, the contracting officer noted that CW's exclusivity clauses prohibited the Government from obtaining "like services from another contractor while the services," were part of CW's contract. She continued: "However, the exclusivity clauses do not absolutely prohibit a transfer of services. The subject contracts allow for the non-exercise of options and a termination of services for the convenience of the government. " Ms. Robinson-Burnette refused to provide a final decision, and concluded that, in her opinion, there was no current dispute that affected CW's performance. App. 18-19.

16. CW filed its complaint in this Court on April 26, 2004.

17. CW seeks a declaratory judgment that it remain as "the exclusive provider of travel services for all MEPS sites identified in CW's competitively-awarded Army DTR Contracts, so long as those Contracts are in effect." Pl. Compl. Prayer for Relief A.

18. In the alternative, CW seeks a declaratory judgment asserting that CW "is the exclusive provider of travel services for all MEPS sites identified in Carlson's competitively-awarded Army DTR Contracts, unless and until the DTS CUI is operationally deployed to and capable of performing the majority of travel requirements at each MEPS site." Pl. Compl. Prayer for Relief B.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/James M. Kinsella
JAMES M. KINSELLA
Deputy Director

s/Lisa B. Donis
LISA B. DONIS
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
ATTN: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7561

Attorneys for Defendant

JULY 22, 2004

CERTIFICATE OF FILING

I hereby certify that on July 22, 2004, a copy of foregoing "Defendant's Proposed Findings of Uncontroverted Fact," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Lisa B. Donis
LISA B. DONIS