No. 04-718C
(JUDGE HEWITT)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

CW GOVERNMENT TRAVEL, INC.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

---

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO OUR MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/James M. Kinsella
JAMES M. KINSELLA
Deputy Director

s/Lisa B. Donis
LISA B. DONIS
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
ATTN: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7561

Attorneys for Defendant

September 20, 2004

# TABLE OF AUTHORITIES

**CASES** **(PAGE(S)**

Aldridge v. United States,
59 Fed. Cl. 387 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Alliant Techsytems, Inc. v. United States,
178 F.3d 1260 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Buse Timber & Sales, Inc. v. United States,
45 Fed. Cl. 258 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Clearwater Constructors, Inc. v. United States,
56 Fed. Cl. 303 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fields v. United States,
53 Fed. Cl. 412 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Glass v. United States,
258 F.3d 1349 (Fed. Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hamilton Security Advisory Services v. United States,
60 Fed. Cl. 144 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hi-Shear Technology Corp. v. U.S.,
55 Fed. Cl. 418 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Made in the USA Foundation v. United States,
51 Fed. Cl. 252 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Naplesyacht.com v. United States,
60 Fed. Cl. 459 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Optimal Data Corp. v. United States,
17 Cl. Ct. 723 (1989), aff'd, 904 F.2d 45 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 3

Sterling Savings v. United States,
57 Fed. Cl. 234 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sweet v. United States,
53 Fed. Cl. 208 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Veit & Company, Inc. v. United States,
56 Fed. Cl. 30 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## DOCKETED CASES

CW Government Travel, Inc. v. United States,
No. 03-1274 (Fed. Cl. Aug. 3, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATUTES AND REGULATIONS

Contract Disputes Act, 41 U.S.C. § 601, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CW GOVERNMENT TRAVEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-718C |
| v. | ) | (Judge Hewitt) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO OUR MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

In our motion to dismiss or, in the alternative, motion for summary judgment, we demonstrated that this Court did not possess jurisdiction to entertain plaintiff's complaint because it did not file a CDA claim with its contracting officer. We additionally showed that plaintiff's complaint was not ripe for adjudication and must be dismissed. Moreover, we established that, even if this Court possessed jurisdiction to entertain the plaintiff's complaint, the Government was entitled to summary judgment because the plaintiff was not legally entitled to the declarations it seeks from this Court.

In its response, the plaintiff, CW Government Travel, Inc. ("CW"), attempts to demonstrate that this Court does possess jurisdiction to entertain its complaint, that its complaint was ripe for adjudication, and that the Court could issue the declarations it seeks. However, as we discuss below, none of these claims have merit and this Court should grant our motion and dismiss CW's complaint.

## INTRODUCTION

Preliminarily, the arguments made by CW serve to demonstrate that this case is not ripe for adjudication. It is apparent, based upon CW's complaint and brief, that there is no current dispute between the parties. Rather, CW is concerned about events that *may or may not* occur: whether its contract options will be exercised, and whether some of its work might be transferred to other contractors. CW suggests that the Court cannot wait until an event actually occurs that would cause a present legal dilemma, because, if that future even happens, "the Court would face a far different and more complex situation." Pl. Br. at 3. CW then states that, if the Government does not exercise its contract options in March 2005, there may be several TRO motions to resolve and the Court would have to contend with "competing interests of multiple parties." Id. As we argued in our initial motion, the fact that CW may have a claim in the future does not give rise to one now. The fact remains that, as of this date, there is no live dispute between the parties. CW is performing in accordance with its contracts, and the Government has notified the contractor that it is exercising the next six-month option period, scheduled to commence on October 1, 2004. Accordingly, CW has no present claim or dispute. What CW wants is for this Court to issue a declaration about what the Government is able to do in the future. However, as we established in our initial brief, this type of relief is akin to an advisory opinion and is not available in this Court.

Moreover, the thrust of CW's argument seems to be that, although it entered into options contracts with the Government, the Government is somehow restricted in how, and when, it can exercise those options. This is simply not supportable. As we argued in our initial motion, and

contrary to CW's argument, contract clause ¶ 1.1.1.2 does not restrict the Government's right to exercise options. CW maintains that this clause allows only for a non-renewal of an option period if DoD implemented the DTS. However, the clause is clear upon its face that the Army "may" exercise options and may choose *not* to exercise some options so that it could transfer some requirements in the event DTS was operational. It is without dispute that, "[t]he government's failure to exercise an option in a contract does not normally give rise to a breach of contract action." Optimal Data Corp. v. United States, 17 Cl. Ct. 723, 731 (1989), aff'd, 904 F.2d 45, (Fed. Cir. 1990). "[T]he exercise of the contract's options rest[s] within the sole discretion of the [government], and its decision not to exercise those options does not breach the contract." Fields v. United States, 53 Fed. Cl. 412, 419 (2002). Accord Hi-Shear Technology Corp. v. U.S., 55 Fed.Cl. 418 (2003).

## ARGUMENT

### I. This Court Does Not Possess Jurisdiction To Entertain CW's Complaint

#### A. CW Did Not Submit Valid Claims

We established that CW did not submit a valid claim to its contracting officer. In its response, CW states that all of its letters to the contracting officers were valid claims within the meaning of the Contract Disputes Act, 41 U.S.C. § 601, et seq. ("CDA"). As we noted in our motion, however, the first three CW letters do not clearly seek an interpretation of contract terms. Rather, the first letter asked that the contracting officer "confirm that the travel requirements for all MEPS sites indicated in the four DTR Contracts above will continue to be performed by CWGT throughout the total contract period, including all options that are exercised by the Government." App. 6-7. The second CW letter repeated the same request. App. 9-10. The

third CW letter asked that the contracting officer "respond to CWGT's outstanding requests for a Contracting Officer's final decision on this subject without further delay." App. 11-12. These letters demanded an expression of the agency's intent rather than an interpretation of contract terms.

In its fourth letter, CW stated that it was "entitled to a non-evasive final decision, " and specifically requested that the Government, "**confirm, without equivocation, that so long as the above-cited contracts are in effect, and CWGT is satisfactorily performing, none of the MEPS travel requirements currently included in these contracts may be transferred to another contractor."** App. 17. (Emphasis in original.) This was not a request for an interpretation of contract terms. Rather, CW was clearly seeking a promise of how the Government might act in the future.

As support for our motion, we cited the decision by the Court of Appeals for the Federal Circuit in Alliant Techsytems, Inc. v. United States, 178 F.3d 1260 (Fed. Cir. 1999). CW maintains that our reliance upon Alliant is misplaced. CW is not correct. The Alliant case demonstrates the difference between a contractor seeking an interpretation of a contract that involved a live controversy, and one, like here, where the contractor is asking the contracting officer for assurances upon how the Government will act in the future. Therefore, in stark contrast to Alliant, where the Government already had taken contractual action, and the contractor's performance in response to that action was imminent, no such action has been taken in this case.

This Court has followed Alliant in cases with similar factual situations. E.g., Clearwater Constructors, Inc. v. United States, 56 Fed. Cl. 303 (2003) (interpretation of whether government

direction to contractor for "explosion proof" control panels was a constructive change to requirements); GPA-I, LP v. United States, 46 Fed. Cl. 1762 (2000) (interpretation of a lease payment clause which determined whether ongoing Government payments were tardy). However, we are unaware of any reported decision where a plaintiff has stretched the meaning of "interpretation" anywhere near as broadly as CW does in this case, and is seeking instead a guarantee of future Government action.

CW cites to another case it brought in this Court, CW Government Travel, Inc. v. United States, No. 03-1274, slip op. at 21 (Fed. Cl. Aug. 3, 2004), to support its contention that it has properly sought an interpretation of contract terms. However, this case is easily distinguished. In the earlier case, the agency informed CW of its intent to take action that might affect CW's rights under its contract. Accordingly, the Court decided it could issue an interpretation of a contract during performance, because there was an actual dispute between the parties that affected contract performance. In contrast, here the agency has taken no action, and has not decided to take any action, that affects CW's current performance, and CW is instead asking this Court to rule upon a hypothetical situation.

Accordingly, in its purported "claims," CW did not seek an interpretation of its contract, but an opinion or a guarantee from its contracting officer that some future action would either not occur, or be prohibited by its contract. Because this kind of declaration is not contemplated by the CDA or its regulations, CW never submitted a proper claim and this Court does not possess jurisdiction to entertain CW's complaint.

B. The Contracting Officer Did Not Issue A Final Decision

As we established in our initial motion, in addition to the requirement that a contractor must file a valid claim for this Court to possess jurisdiction, a contracting officer's final decision is also a jurisdictional prerequisite. See Made in the USA Foundation v. United States, 51 Fed. Cl. 252, 255 (2001); Buse Timber & Sales, Inc. v. United States, 45 Fed. Cl. 258, 265 (1999)). The contracting officer did not issue a final decision in this case.

In her letter dated March 1, 2004, the contracting officer provided an interpretation of the exclusivity contract clauses referenced by the contractor in its letter of January 6, 2004. While she noted that the exclusivity clauses prohibited the Government from obtaining identical travel services from another contractor while CW was providing the services, the clauses did not absolutely prohibit a transfer of those services. App. 18-19.

In addition to the above interpretation, however, the contractor also demanded that the contracting officer determine how the clauses would be applied if certain hypothetical events occurred. Assuming, for the sake of argument, that this demand represents a valid claim, the contracting officer did not decide the matter adversely to the contractor, and there is no final decision to challenge in this Court. The contracting officer noted that there was no "current dispute" between the parties. App. 18-19.

II. CW's Complaint Is Not Ripe For Adjudication

This Court should dismiss CW's complaint because its request for declaratory relief is not ripe for adjudication. As such, CW has failed to state a claim upon which relief could be granted. This Court's jurisdiction to entertain nonmonetary disputes is restricted, and is exercised only in very limited circumstances -- none of which exist here.

CW premises its case upon the fact that there is a "live dispute" between the parties. It is apparent, however, that no such dispute exists. To stretch the meaning of "dispute" to fit the circumstances presented here would circumvent the meaning of the CDA. CW relies upon Alliant to support its case, but as we demonstrated in our initial motion, and discuss below, there are stark differences between Alliant and this case.

In Alliant, as we have discussed, the appellate court held that this Court was not expected to issue a declaration of a contractor's rights anytime the contractor raised a question during contract performance. Rather, "[i]n responding to such a request, the court . . . is free to consider the appropriateness of declaratory relief, including whether the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interests." Id. at 1271 (emphasis added). The court then specifically described the scenario presented by this case:

> While a contractor may want to know ahead of time how a contract issue will be resolved . . . such cases do not ordinarily put into question whether the contractor is obligated to perform at all. In such a case, the dispute typically concerns whether the government will be obligated to grant an equitable adjustment after the ordered performance is completed. It would normally be appropriate in such cases for the court or board to decline to issue a declaratory judgment and to await a later equitable adjustment claim by the contractor. In refusing a request for declaratory relief in the absence of a need for an early declaration of the parties' rights, the court or board would be applying a principle analogous to the traditional rule courts will not grant equitable relief when money damages are adequate. The discretion to grant declaratory relief only in limited circumstances allows the court or board to restrict the occasions for intervention during contract performance to those involving a fundamental question of contract interpretation or a special need for early resolution of a legal issue.

Id. (Emphasis added). CW ignores this clear language in its response brief. It is obvious, however, that its case cannot withstand that scrutiny. See Hamilton Security Advisory Services v. United States, 60 Fed. Cl. 144 (2004); Sweet v. United States, 53 Fed. Cl. 208, 227-228

(2002); Made in USA Foundation v. United States, 51 Fed. Cl. 252, 256 (2001). CW maintains it has presented a "live dispute," but it has not done so.

CW can point to no current or imminent decision by the Army to delete MEPS locations from the CW travel services contracts. CW admits that its option for the next six months will be exercised. CW has not been ordered to perform any action in contravention to its contract requirement. At most, CW alleges that the Government contemplates the future deletion of requirements at a time when CW's contracts might not even be in effect. CW incorrectly argues that there is an imminent decision to delete MEPS locations from its contracts. Pl. Br. at 27. However, the fact that the Government has solicited bids for future MEPS work does not affect CW's current contract. The award date of the solicitation was October 29, 2004, it has recently been extended until November 30, 2004, but the earliest the work would be started would be after CW's next option period – April 2005. There is also no guarantee that the work will start on that date. It has been postponed frequently. Accordingly, CW's current contract work is unaffected, and remains unaffected for the next option period. There is no live dispute between the parties at this time.

Consequently, CW has no standing to bring its suit in this Court. See Aldridge v. United States, 59 Fed. Cl. 387, 388-89 (2004); Glass v. United States, 258 F.3d 1349, 1355-56 (Fed. Cir.2001); Sterling Savings v. United States, 57 Fed. Cl. 234, 236 (2003). If there is no standing, then the Court does not possess jurisdiction to hear the merits of a claim. A litigant must demonstrate, "an invasion of a legally protected interest," that is "actual or imminent. " Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, (1992).

CW has failed to differentiate, and does not explain in its opposition brief, how its demand for a declaration here is any different from an advisory opinion. It wants the Court to declare how it would rule upon a possible future event. It is beyond dispute, however, that "the court does not have jurisdiction to 'render advisory opinions.' . . . The constitutional offense to advisory opinions is founded in the requirement of Article III that a case or controversy must exist before the court exercises jurisdiction." Naplesyacht.com v. United States, 60 Fed. Cl. 459, 481 (2004), quoting Fina Oil & Chemical Co. v. Ewen, 123 F.3d 1466, 1470 (Fed. Cir. 1997). There is no case or controversy yet in this case and may never be one. Accordingly, CW's complaint should be dismissed.

A. The Declarations Sought By CW In This Case Will Not Likely Resolve Any Dispute

As we stated in our opening brief, in the first of the two requested declaratory judgments, CW requests that the Court declare that CW remain as "the exclusive-provider of travel services for all the MEPS sites identified in CW's competitively-awarded Army DTR Contracts, so long as those Contracts are in effect." CW misstates our argument concerning this first declaration. CW erroneously states that we conceded "that the first requested declaratory judgment would resolve the dispute." Pl. Br. at 29. What we *actually* stated was: "Arguably, this would resolve the dispute because it would mandate that CW remains as the sole provider of travel services for all MEPS sites . . . However, even CW appears to realize that first proposed declaration goes beyond its own strained contract interpretation (which at least would allow the transfer of requirements upon deployment of a DTS CUI)." Def. Mot. at 20. Accordingly, there was no concession which "destroys" our motion.

CW's argument in this section strengthens our contentions. CW posits that this Court could fashion its own declaratory judgment holding that "MEPS travel services may not be deleted from Carlson's DTR Contracts." Pl. Br. at 30. However, there is no Government action in this case that has threatened CW's contract rights or performance. There is no order directing the removal of MEPS works. There is no current threat of the work being deleted during CW's contract performance. CW has offered this Court nothing but speculation and hypothetical situations to rule upon, and this Court should reject CW's invitation for it to fashion such a declaration.

B. CW Has Adequate Legal Remedies to Protect Its Interests Without Resorting To A Premature Judicial Determination Of Its Contract Rights

CW has argued throughout its opposition that, if it waits until an actual dispute arises to sue the Government, this Court would be faced with an extremely complicated situation and a "tremendous hardship." This is not the standard for bringing a case in this Court. If the scenario as envisioned by CW actually comes to pass during its contract performance, and the Government elects to transfer MEPS locations to another contractor, CW can pursue legal action at that time. The law provides for a full recovery of any costs or damages it may sustain in the future due to a possible deletion of work from the CW contracts. CW's legal rights are fully protected and will be available if, and when, any allegedly wrongful events occur. In the unlikely circumstance that events develop as CW contends, and the Government deletes MEPS requirements during the performance of its contracts, an ensuing litigation will not necessarily be complex or involve multiple parties. It likely would involve only a breach claim by CW, based upon contract interpretation. Moreover, the fact that the litigation may be complicated or involve additional parties does not give this Court jurisdiction to hear a dispute before it is ripe.

Consequently, as we demonstrated in our initial motion, CW's suit in this Court is premature and should be dismissed by this Court.

III. The Government Is Entitled To Summary Judgment

CW claims that there are material facts in dispute in this case. CW asserts that these facts include the Government's intention to award contracts for MEPS travel services on October 29, 2004, pursuant to Solicitation W91QUZ-R-0007. However, those potential MEPS contracts have no effect upon CW's current contract performance. These other contracts are not even scheduled to begin until April 2005 – following the expiration of CW's next option period - and may not necessarily begin at that time. CW additionally attempts to find a factual dispute in the meaning of certain contract clauses. The interpretation of a contract is a legal issue - not a factual one. Accordingly, there are no "genuine issues of material fact" in dispute, and as we established in our initial motion, the Government is entitled to summary judgment.

A. CW Is Not Entitled To The Declarations It Seeks In This Case

We established that, even if this Court finds it possesses jurisdiction to entertain CW's complaint, the Government is nonetheless entitled to summary judgment. CW states that the contracting officer must first offer a contract interpretation before this Court can interpret them, and therefore summary judgment is not appropriate. However, CW has already maintained that it had a valid claim before the contracting officer. Therefore, assuming, for the sake of argument, that CW is correct, and there was a deemed denial of its claim, then this Court may certainly review whether CW is entitled to the declarations it seeks in this case. The Court cannot, however, enter the declaratory judgments sought by CW unless it determines that the declarations are accurate.

Specifically, CW has asked for a declaratory judgment “finding that CW is the exclusive provider of travel services for all the MEPS sites identified in CW’s competitively-awarded Army DTR Contracts, so long as those Contracts are in effect.” Pl. Compl. Prayer for Relief A. As we established in our motion, the contracts themselves demonstrate that CW is not entitled to a declaratory judgment.

CW argues in its complaint that the Army may transfer requirements from the travel service contracts to the DTS PMO only upon “implementation of a fully functional DTS CUI to electronically perform all official travel management services.” Pl. Compl., Introduction and ¶¶ 13-16. That interpretation, however, misconstrues and/or ignores several provisions of the contracts. Moreover, this first request for declaratory judgment goes beyond even CW's incorrect interpretation of contract provisions. It would preclude a transfer of MEPS locations so long as any aspect of the Army travel service contracts are in effect, even if a DTS CUI is implemented. Consequently, it plainly limits the Government beyond what even CW maintains is the correct contract interpretation.

In its complaint and its response brief, CW focuses upon two clauses -- PWS ¶¶ 1.1.1.2 and 1.6.7 -- to the exclusion of other terms. The first of these clauses states:

> **1.1.1.2** The Army/other DoD agencies may exercise options included within the contract. However, if during the life of the contract, the DoD implements the Defense Travel System (DTS) and is able to provide the Army/other DoD agencies with travel services under the new system, some or all options may not be exercised under the contract resulting from this solicitation.

CW asserts that all parties understood that "DOD implements the Defense Travel System (DTS)' meant the implementation of a fully functional DTS CUI to electronically perform all official travel management services." However, the contracts do not contain any language supporting

that interpretation. As we argued below, while CW contends that interpretation "was understood by all parties," it provides no evidence to support the assertion.

Moreover, even if CW has correctly interpreted the meaning of "implementation of the Defense Travel System," the clause itself does not restrict the Government's right to exercise options. On its face, the clause simply recognizes that the Army may choose not to exercise options in order to transition services. It then alerts CW to the possibility that some options will not be executed to allow a transfer of requirements. The clause does not limit the right of the Army to exercise options to only those situations where a DTS, with an operational CUI, has been implemented.

PWS ¶ 1.6.7, declares: "At a future date a DOD travel services contract(s) will be awarded replacing this contract and all other Service/Agency existing travel service contracts. Once the DOD travel services contract is awarded all DOD sites will transition in accordance with the implementation dates to the DOD travel services contract." The clause does not restrict the Army's right to delete or transfer travel service requirements. On the contrary, the clause declares the intention of the Government to transfer requirements when DOD travel services are awarded. CW interprets the phrase "implementation of a Defense Travel System" from PWS ¶ 1.1.1.2 as the same as "DOD travel service contract(s)" in PWS ¶ 1.6.7. As discussed, the use of that definition with respect to PWS ¶ 1.1.1.2 at best is highly dubious; the transfer of that definition to modify the term "DOD travel services contract(s)" located in a separate paragraph (PWS ¶ 1.6.7) three pages later in the contract is not supportable.

CW then argues, without support or authority, that PWS ¶ 1.6.8 can only be read as a modifier of ¶ 1.6.7. Paragraph 1.6.8 reads: "At any time after the base period of this contract,

with a 90-day notice from the Contracting Officer to the Contractor, the Government may identify any/or all workload included in this contract to be deleted. " The plain language of this clause refutes CW's interpretation. It is not limited in any way. This clause plainly allows the Army to transition travel service requirements to DTS PMO. It expressly says the Army may delete such requirements "at any time after the base period of this contract." CW attempts to distinguish this language simply because CW's interpretation of the other two clauses (PWS 1.1.1.2 and 1.6.7) can prevail only if PWS 1.6.8 is entirely disregarded, contrary to the standard rule of contract interpretation that courts reject any interpretation that would leave portions of the contract language meaningless, useless, ineffective or superfluous. Veit & Company, Inc. v. United States, 56 Fed. Cl. 30, 39-40 (2003).

Accordingly, PWS 1.6.8 explicitly allows the Government to delete any requirements from the CW travel service contracts (including MEPS locations) for transition to DTS PMO after expiration of the base period, without recourse to any other contractual provision. Despite CW's contentions, PWS 1.1.1.2 and 1.6.7 do not contradict that authority.

As we established, the travel services contracts had a one-year base and eight six-month options. The Government may exercise the options, but is not required to do so. Therefore, the Army may terminate services to the MEPS locations in any region simply by not exercising an option period for a region. Consequently, this Court could not issue the declarations requested by CW because CW's interpretation of the contract clauses are not supportable by the language of the contracts. The Court should dismiss CW's complaint because there are no genuine issues of material fact in dispute and the Government is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, and for the ones set forth in our initial motion to dismiss, defendant respectfully requests that the Court dismiss plaintiff's complaint for lack of jurisdiction, or, in the alternative, grant summary judgment in the Government's favor.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

James M. Kinsella
JAMES M. KINSELLA
Deputy Director

s/Lisa B. Donis
LISA B. DONIS
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
ATTN: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7561

Attorneys for Defendant

SEPTEMBER 20, 2004

CERTIFICATE OF FILING

I hereby certify that on September 20, 2004, a copy of foregoing "Defendant's Reply to Plaintiff's Opposition To Our Motion to Dismiss Or, In The Alternative, Motion for Summary Judgment," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Lisa B. Donis
LISA B. DONIS