In the United States Court of Federal Claims

CW GOVERNMENT TRAVEL, INC., Plaintiff,

v.

THE UNITED STATES OF AMERICA, Defendant.

Case No. 04-718C
(Judge Emily C. Hewitt)

JOINT PRELIMINARY STATUS REPORT

Pursuant to Appendix A of the Rules of the United States Court of Federal Claims ("RCFC") and the Court's Opinion and Order dated December 30, 2004, Plaintiff CW Government Travel, Inc., ("Carlson" or "Plaintiff'), and Defendant, the United States, by their respective undersigned counsel, hereby submit this Joint Preliminary Status Report, which addresses the following issues:

**1. Does the Court have jurisdiction over the action?**

Pursuant to the Court's opinion and Order dated December 30, 2004, the Court has determined that it possesses jurisdiction to consider this case pursuant to 28 U.S.C. § 1491(a).

**2. Should the case be consolidated with any other case and the reasons therefore?**

The parties know of no other case with which the instant matter should be consolidated.

**3. Should trial of liability and damages be bifurcated and the reasons therefore?**

Trial should not be bifurcated; the primary relief sought is equitable and is likely to be integrally connected to the facts

proven on the merits.

**4. Should further proceedings in this case be deferred pending consideration of another case before this Court or any other tribunal and the reasons therefore?**

Deferral is not necessary, since no other case known to the parties would resolve the issues raised herein. Moreover, the parties believe that delay would not be in their respective interests. Furthermore, the parties are not aware of any grounds to transfer this case to any other tribunal.

**5. Will a remand or suspension be sought and the reasons therefore and the proposed duration?**

There is no need for a remand or suspension.

**6. Will additional parties be joined and, if so a statement describing such parties, their relationship to the case and the efforts to effect joinder and the schedule proposed to effect joinder?**

The parties do not foresee any grounds to join additional parties.

**7. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c) or 56 and, if so, a schedule for the intended filing?**

At this time, Plaintiff anticipates the need for a trial and presentation of testimony. However, the case may be suitable for consideration on Cross-Motions for Summary Judgment after discovery. Defendant filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, which the Court denied on December 30, 2004.

**8. What are the relevant factual and legal issues?**

As described in the Complaint, and without prejudicing the full statement of the claims set forth therein, the issues are

essentially:

**a. Factual Background**

In the 1990s, the Department of Defense (the "DoD") began efforts to reengineer its travel processes. To further this initiative, the DoD proceeded to convert its travel processes to automated, end-to-end system called the Defense Travel System ("DTS"). After years of development, the DTS is not yet fully functional and has not been deployed at most DoD sites.

While the DTS is being developed and deployed, the DoD has a continuing need for traditional travel services to assist DoD personnel to make required travel arrangements. Accordingly, to ensure that traditional travel services would be available, the United States Department of the Army, the Military Surface Deployment and Distribution Command ("'SDDC") (formerly Military Traffic Management Command, "MTMC") conducted a full and open competition for contracts to provide traditional travel services to DoD sites throughout the continental United States.

As a result of this competition, SDDC awarded four large Defense Travel Regional contracts covering 42 states to Carlson (hereinafter referred to as the "DTR Contracts"). The basic terms of the DTR Contracts are identical, but each contract specifies a different multi-state region in which Carlson is the exclusive provider of"traditional travel services" to DoD bases and facilities, including Military Entrance Processing Stations ("MEPS"). MEPS are facilities where military recruits are processed before being transported to the location at which they

will begin basic training. Collectively, the DTR Contracts require Carlson to provide traditional travel services to 54 MEPS.

Each of Carlson's contracts also contained an Exclusivity Clause stating that Carlson "has the exclusive right to provide all official commercial travel services at all sites covered in this contract." The contracts further provided that "[n]o person, private organization, or commercial travel service, including competing travel agencies, direct suppliers, or travel software vendors, will be permitted direct access to areas under DoD control to advertise, sell, provide or promote official travel services to those sites, unless the Contractor has first declined to provide the particular service or the Contractor's levels of service are determined by the Contracting Officer to be unresponsive and/or unsatisfactory."

Carlson's contracts became effective on October 1, 2002, and consist of a base year plus eight option periods. Each option period allows SDDC to extend the contract for an additional six months. If all eight option periods are exercised, the contract will have a total duration of five years - e.g., September 30, 2007. SDDC has exercised three of the eight option periods, thereby extending Carlson's contracts through March 31, 2005. Because there is no other existing contract to cover all of the services Carlson provides under its DTR Contracts, Carlson anticipates that SDDC will exercise the fourth option period and extend the contracts for another six months until September 30,

2005.

On February 13, 2004, a different Army command, the Army Contracting Agency, Information Technology, E-Commerce and Commercial Contracting Center ("ITEC4") released Solicitation Number W91QUZ-04-R-0007 (the "MEPS Solicitation"), which was set aside for participation by small businesses only. The MEPS Solicitation requested proposals from small businesses to provide travel services to six MEPS regions covering 67 locations, including the 54 MEPS locations covered by Carlson's contracts. On December 30, 2004, ITEC4 announced the intent to award six contracts (the "MEPS Contracts") to small businesses that responded to the MEPS Solicitation. Under the MEPS Solicitation, performance of the newly-awarded MEPS Contracts is set to begin on April 1, 2005. These contracts have not yet been awarded. In addition, if they are awarded with a performance date of April 1, 2005, the Government intends to issue contract modifications that will delay performance of these contracts until October 1, 2005, at the earliest.

The MEPS Contracts require the awardees to provide traditional travel management services to the covered MEPS sites until the DTS is implemented. According to the MEPS Solicitation, the DTS is not expected to facilitate MEPS travel before Fiscal Year 2006. Carlson contends there is considerable doubt as to whether the DTS will ever be capable of performing MEPS travel requirements which consist of 95% group travel. Defendant does not agree with this assessment.

On April 26, 2004, Carlson filed this action seeking a declaratory judgment that Carlson is the exclusive provider of traditional travel services for all the DoD sites identified in the four DTR Contracts, so long as the DTR Contracts are in effect, or unless and until the CUI required to satisfy the DTS requirements is operationally deployed throughout those states. Carlson requested a preliminary and permanent injunction ordering the Army to refrain from transferring the requirement to provide traditional travel services for MEPS locations under any of Carlson's contracts, so long as the DTR Contracts were in effect, or unless and until a DTS CUI is operationally deployed and able to provide all required travel services to the Army at those MEPS sites.

Carlson also agrees that in the event DoD awards travel service contracts replacing the DTR Contracts in their entirety "'and all other Service/Agency existing travel service contracts," the work required under the DTR Contracts may be transferred to the new DoD worldwide contracts upon 90 days notice.

**b. Legal Issues**

Whether the Options Clause limits the Government's ability to decline to exercise an option under Carlson's DTR Contracts when the DTS CUI has not yet been fully implemented and, if so, the scope of that limitation.

Whether there was an anticipatory breach of Carlson's contracts.

Whether Carlson's DTR Contracts permit the Government to delete work performed at MEPS sites and transfer that work to another contractor when the DTS CUI has not yet been fully implemented to provide automated travel services for the MEPS travel requirements.

Whether paragraphs 1.6.7. and 1.6.8. may be applied independently, or whether paragraph 1.6.8. is a subsidiary paragraph that implements or modifies paragraph 1.6.7.

Whether paragraphs 1.6.7. and 1.6.8. apply exclusively to the deletion of work in the event the Government awards worldwide travel services contract(s) to replace the DTR Contracts in their entirety and all other DoD travel contracts, or whether these paragraphs also apply to the deletion of a portion of the work under the DTR Contracts when the Government procures traditional travel management services only for MEPS sites in the DTR Contracts.

Whether paragraph 1.6.8 permits the Government to delete some work from the DTR Contracts for the express purpose of transferring the work to other contractors, whether or not the Government has awarded Worldwide CTO Contracts to replace the DTR Contracts in their entirety.

Whether the Exclusivity provisions in the DTR Contracts (paragraphs 1.7.1 and 1.7.2) prevent the Government from deleting work from the DTR Contracts for the express purpose of transferring the work to other contractors.

**9. What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

The parties do not presently foresee settlement as being a realistic means of resolving this case. The parties believe that alternative dispute resolution is not viable because each of the issues centers on legal issues, or on application of law to facts where the scope of relevant evidence is disputed.

**10. Do the parties anticipate proceeding to trial? Does any party, or do the parties jointly, request expedited trial scheduling and, if so, the reasons why the case is appropriate therefore?**

Plaintiff does not believe at this time that the case is reasonably likely to be disposed of through Cross-Motions for Summary Judgment before trial. Defendant believes that cross-motions for summary judgment may be appropriate. However, defendant agrees that discovery is necessary prior to making a decision whether dispositive motions can be filed. Moreover, given the pending award of five contracts for the MEPS sites in the DTR Contracts which the Government has agreed will not commence prior to October 1, 2005, the parties request an expedited trial schedule to fully resolve this litigation by a Court decision no later than August 31, 2005.

**11. Are there any special issues regarding electronic case management?**

No.

**12. Is there other information of which the Court should be aware at this time?**

No.

**13. Discovery and Discovery Plan.**

Carlson believes that discovery is required into several of the legal issues before the Court. For example, discovery is required as to the interpretation of several clauses of the contract, including, but not limited to, the Exclusivity Clause, the Options Clause and paragraphs 1.6.7. and 1.6.8. These clauses have been in a number of previous or other DoD travel management service contracts and have a history or course of dealing/interpretation. Discovery regarding the interpretation of the contract clauses will necessitate document requests, requests for admissions, interrogatories, and depositions to probe the parties' understanding of the clauses and state of mind at the time they entered into the contract, the course of dealing between the parties both before and after the contract was executed, and trade usage of the various terms in the Government travel service area.

Carlson also believes that discovery is necessary into the readiness or capability of the DTS CUI to provide the unique group travel requirements of the MEPS. Discovery into the status of the DTS Worldwide CTO Contract(s) is necessary to determine whether paragraphs 1.6.7 and 1.6.8 have been triggered. Again, this discovery will require document requests, requests for admission, interrogatories, and depositions.

Carlson proposes that the parties agree to exchange initial written discovery requests by Thursday, February 17, 2005; respond to initial written requests within 30 days of service; serve all

supplemental written discovery by April 12, 2005; and complete all fact discovery, including depositions, by Thursday, May 12, 2005.

The Government agrees that discovery will be necessary upon the interpretation of the disputed contract clauses, consisting of documents production, interrogatories, request for admissions, and depositions. The Government believes that discovery can be completed by June 1, 2005. At that time, both parties will be in a position to know whether dispositive motions can be filed. If the parties determine that dispositive motions are not appropriate, defendant proposes that trial can be held in July 2005.

Respectfully submitted,

s/Lars E. Anderson
LARS E. ANDERSON
VENABLE LLP
8010 Towers Crescent Dr.
Vienna, Virginia 22182-2707
Telephone No.: (703) 760-1600
Telecopier No.: (703) 821-8949

*Of Counsel:*

el W. Robinson
Benjamin A. Winter
Julia M. Kiraly
*Counsel to Plaintiff*
*CW Government Travel, Inc.*

Respectfully submitted,

PETER D. KEISLER
Acting Assistant Attorney General

DAVID M. COHEN
Director

s/James M. Kinsella
JAMES M. KINSELLA

Deputy Director

s/Lisa B. Donis
LISA B. DONIS
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone No.: (202) 305-7561

*Counsel to Defendants*

Dated: January 27, 2005

CERTIFICATE OF FILING

I hereby certify that on JANUARY 27, 2005, a copy of foregoing "JOINT PRELIMINARY STATUS REPORT," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Lisa B. Donis
LISA B. DONIS